IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cristal Galeana,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-24-03617-PHX-SMB (ASB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN M. BRNOVICH, UNITED STATES DISTRICT JUDGE:

Plaintiff Cristal Galeana seeks judicial review and reversal of the final decision of the Commissioner of the Social Security Administration[1] denying Plaintiff's application for Social Security Disability Insurance and Supplemental Security Income.

## I. BACKGROUND

On November 10, 2021, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (AR[2] 21.) In both applications, Plaintiff alleged that she became disabled on July 1, 2021. (*Id.*) The Social Security Administration ("SSA") denied Plaintiff's applications on June 21, 2022. (*Id.*) Following Plaintiff's request for reconsideration, the SSA affirmed the denial

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this action.
[2] Administrative Record.

of the applications on July 13, 2023. (AR 112-31.) At Plaintiff's request (AR 156-59), a hearing was held on December 5, 2023 before Administrative Law Judge ("ALJ") Paul Isherwood in Phoenix, Arizona. (AR 54-77.) There was also a supplemental hearing on April 9, 2024 held via telephone. (AR. 36-53.) In a decision dated May 13, 2024, the ALJ ruled Plaintiff was not entitled to SSDI or SSI because she was not disabled within the meaning of the Social Security Act from July 1, 2021 through the date of the decision. (AR 21-30.) That decision became final on November 5, 2024, when the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

Having exhausted the administrative review process, Plaintiff sought judicial review of the Commissioner's decision by filing a Complaint (Doc. 1) under 42 U.S.C. § 405(g). The Court has subject matter jurisdiction pursuant to that statute. On May 5, 2025, Plaintiff filed an Opening Brief (Doc. 17), seeking remand for calculation of benefits. On June 4, 2025, Defendant filed an Answering Brief (Doc. 19), and on June 16, 2025, Plaintiff filed a Reply Brief (Doc. 20).

## II.    STANDARD OF REVIEW

This Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In reviewing the decision of the ALJ, the Court will not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial" evidence means "more than a mere scintilla," but it is "less than a preponderance." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citation omitted). That is, "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). In determining whether substantial evidence supports the ALJ's decision, the Court considers "the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts" from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion,

the court may not substitute its judgment for that of the Secretary." *Id.* at 720-21. The "court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citations omitted). The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

### III. ANALYSIS

To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A five-step procedure is used to determine whether a claimant is "disabled" and thus eligible for SSA benefits:

> In step one, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the Secretary proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial gainful activity. If this requirement is met, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. At step four, the Secretary determines whether the claimant can perform "past relevant work." If the claimant can perform such work, she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the Secretary must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy.

*Reddick*, 157 F.3d at 721 (citing 20 C.F.R. § 404.1520). "The recent changes to the Social Security regulations[3] did not affect the familiar 'five-step sequential evaluation process.'"

---

[3] Different regulations apply, depending on whether a claim was filed before, on, or

*Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520(a)(1)).

On May 13, 2024, the ALJ ruled Plaintiff was not under a disability as defined in the Social Security Act, and therefore not entitled to SSDI or SSI. (AR 30.) In his decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2021, the alleged onset date of her disability. (AR 23.) The ALJ next determined Plaintiff had the following "severe" impairments within the meaning of the regulations: Chronic Ischemia and Kawasaki's disease. (AR 24.) The ALJ further found that Plaintiff had other, "non-severe" impairments: tuberculosis, thyroid cancer, and obesity. (*Id.*) However, the ALJ concluded that the impairments, whether considered singly or in combination, did not meet or medically equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (AR 25.)

Next, the ALJ considered Plaintiff's residual functional capacity ("RFC").[4] (AR 25-29.) The ALJ determined Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (AR 25.) The ALJ found that Plaintiff was incapable of performing past relevant work as a personal attendant, a teller, or an industrial cleaner. (AR 29.) However, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, she could perform other jobs that exist in significant numbers in the national economy. (AR 30.) The ALJ therefore concluded that Plaintiff had not been disabled from July 1, 2021 through the date of the decision under 20 CFR §§ 404.1520(g) and 416.920(g). (AR 30.)

---

after March 27, 2017. 20 C.F.R. § 404.1520. In the case at bar, Plaintiff's claim was filed in 2021. Thus, the newer regulations apply.

[4] A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). In determining a claimant's residual functional capacity, an ALJ must assess all the evidence to determine what capacity the claimant has for work despite his or her impairments, including medical records, and the claimant's and others' descriptions of limitation. *See id.* The ALJ considers a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. *See* 20 C.F.R. § 404.1545(b-d). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a).

Plaintiff argues that the ALJ erred as a matter of law and the decision should be reversed and remanded for calculation of benefits. Plaintiff asserts two errors by the ALJ:

1. The ALJ erroneously relied on unreliable medical opinion evidence to find that no listing was equaled.

2. The ALJ failed to articulate clear and convincing reasons to discount Ms. Galeana's symptom testimony.

(Doc. 17 at 2.) In response, Defendant argues that Plaintiff's impairments do not meet or medically equal the severity of any listed impairment and that the ALJ's decision was based on substantial evidence. (Doc. 19.) Thus, the parties' disputes concern the third and fourth steps of the analytical framework.

### A.     Determination of Listed Impairment (Step Three Findings)

Plaintiff first argues that the ALJ erred when he found that Plaintiff's impairments did not meet or medically equal Listing 4.04C for Ischemic Heart Disease. (Doc. 17 at 6-13.) Plaintiff contends that her heart condition satisfies the description in Section 4.04C of the listed impairments and that the ALJ improperly relied on Dr. Morse's conclusion that Plaintiff's impairments did not meet that, or any other, listing. (*Id.*) Defendant argues that this Court should reject Plaintiff's request to reweigh the evidence. (Doc. 19 at 4.)

#### 1.     Regulatory Description of Impairment

Here, Plaintiff argues that her impairment meets the impairment listed in Section 4.04C. That section provides as follows:

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
> . . .
> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded

> that performance of exercise tolerance testing would present a significant risk to the individual with both 1 and 2:
> 1. Angiographic evidence showing:
>    a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
>    b. 70 percent or more narrowing of another nonbypassed coronary artnery; or
>    c. 50 percent or more narrowing involving a long (greater than 1cm) segment of a nonbypassed coronary artery or
>    d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
>    e. 70 percent or more narrowing of a bypass graft vessel; and
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §4.04C. Simply, section 4.04C "requires a showing not only of coronary artery disease, but also of very serious limitations on activities of daily living." *Arago v. Astrue*, 457 Fed. Appx. 700, 701 (9th Cir. 2011) (citation omitted).

However, section 4.00E limits the use of section 4.04C. That section states: "We will use 4.04C only when you have symptoms due to myocardial ischemia as described in 4.00E3-4.00E7 while on a regimen of prescribed treatment, you are at risk for exercise testing (see 4.00C8), and we do not have a timely ETT or a timely normal drug-induced stress test for you. See 4.00C9 for what we mean by a timely test." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00E9g.

### 2. Legal Standard

At step three of the sequential process, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Social Security Ruling 17-2p dictates how the ALJ must articulate a finding on medical equivalence. SSR 17-2p (2017); Social Security Ruling (SSR) 17-2p, 82 Fed. Reg. 15263 (Mar. 27, 2017). Under the SSA policy interpretation ruling:

> an adjudicator at the hearings or [appeals council] level must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing. If an adjudicator . . . believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation for the reason(s) why the individual is or is not disabled at a later step . . . will provide rationale that is sufficient . . . to determine the basis for the finding about medical equivalence at step 3.

82 Fed. Reg. at 15265. Although binding on ALJs, Social Security Rulings "do not carry the force of law." *Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). Under Ninth Circuit law, "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "However, the ALJ need not discuss the findings in any specific section of her opinion." *Breanne L. F. v. Comm'r. of Soc. Sec.*, No. C23-5869 SKV, 2024 WL 3289606, at *5 (W.D. Wash. July 3, 2024) (citing *Lewis*, 236 F.3d at 513). Plaintiff bears the burden of proving she has an impairment that meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683.

### 3. Discussion

The ALJ determined Plaintiff's impairment or combination of impairments did not meet or medically equal any of the listed in impairments in 20 CFR Part 404, Subpart P, App. 1. (AR 24-25.) The ALJ stated:

> The undersigned has considered all of the listings contained under section 4.00, pertaining to the cardiovascular system. This includes any disorder that affects the proper functioning of the heart or the circulatory system (that is, arteries, veins,

>
> capillaries, and the lymphatic drainage). The disorder can be congenital or acquired. The record does not reflect the necessary symptoms, signs, laboratory findings, response to a regimen of prescribed treatment, functional limitations nor duration to meet nor equal any listing under section 4.00.

(AR 25.) The Court will refer to the ALJ's rationale elsewhere in the decision to determine the basis for this conclusion.

As an initial matter, Plaintiff does not qualify to meet the listing under 4.04C because she has undergone stress testing. As Plaintiff admits, the SSA will only use 4.04C when "you are at risk for exercise testing (see 4.00C8), and we do not have a timely ETT or a timely normal drug-induced stress test for you." (Doc. 17 at 11); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00E9g. In the decision, the ALJ cited the results from two cardiopulmonary exercise tests. (AR 26, 745, 834.) Plaintiff underwent the exercise testing on July 12, 2022 and on November 28, 2022. (AR 745, 834.) Because there are exercise test results to consider, Plaintiff ipso facto cannot meet the listing under 4.04C. (*See* Doc. 17 at 11 (acknowledging that the listing is not fully met because "Ms. Galeana has demonstrated the ability to complete exercise stress testing").)

Alternatively, if the SSA were able to consider Plaintiff's impairments under 4.04C, the ALJ's decision likely would not be supported by substantial evidence. The evidence in the record shows that Plaintiff would meet both prongs of 4.04C. As Plaintiff asserts, the first prong of 4.04C, coronary artery disease with at least 70% narrowing of a bypass graft vessel, "is unambiguously present." (Doc. 20 at 2); 20 C.F.R. Pt. 404, Subpt. P, App. 1 §4.04C1e. Plaintiff had a triple bypass in 2009, and now, two of the vessels are completely occluded. (AR 26.) The first prong would be met.

The second prong states that the coronary artery disease must result in "very serious" limitations to activities of daily living. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §4.04C2. As the ALJ noted, Plaintiff is "unable to perform household chores and needs assistance from her mother and siblings." (AR 27.) Plaintiff testified that she can wash dishes and sweep for five to ten minutes. (AR 275-77.) She must take breaks throughout

the day to allow her chest pain to dissipate, and she can only walk 25 feet before she needs to rest. (AR 27.) The ALJ explained that Plaintiff can "drive, use public transportation, prepare meals, shop, manage finances, socialize with others in person, and take care of her baby." (AR 27.) However, Plaintiff testified that she can only do light grocery shopping once a week and "carry a couple bags of groceries from the car to the house." (AR 276) In addition, Plaintiff can only drive an automatic car for 20-30 minutes. (*Id.*) Plaintiff's chest pain and shortness of breath create serious limitations her "ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §4.04C2; *cf. Arago*, 457 Fed. Appx. at 701-02 (finding that the plaintiff's impairments did not create very serious limitations on activities of daily living because "he maintained an active lifestyle, including daily exercise for an hour, a full complement of household chores, and frequent errands"). Indeed, the ALJ found that Plaintiff is limited to sedentary work, and "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." *Potter v. Covlin*, 220 F. Supp. 3d 1066, 1073 (D. Or. 2016) (citing Social Security Ruling 96-9p). Therefore, the second prong of 4.04C would also be met.

However, as stated above, because Plaintiff has undergone stress testing, the listing in section 4.04C does not apply. Thus, the ALJ did not err by finding that Plaintiff's impairments do not meet or medically equal the impairments listed in 4.04C.

**B.**     **Plaintiff's Symptom Testimony (Step Four Findings)**

Plaintiff next argues that the ALJ erred by failing to provide specific, clear, and convincing reasons for rejecting her symptom testimony. (Doc. 17 at 13-18.) Specifically, Plaintiff asserts that the ALJ erroneously rejected her testimony that she could not perform activities at even the sedentary level. (*Id.* at 13.) In response, Defendant argues that the medical evidence and Plaintiff's activities of daily living contradict her symptom testimony. (Doc. 19 at 6-10.)

//
//

1. **Legal Standard**

There is a two-step analysis for assessing a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Then, if "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* Conclusory or general statements about the plaintiff's symptom testimony do not meet the clear and convincing standard. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). To meet the standard, the ALJ must identify which statements or parts of the plaintiff's testimony are not credible and explain why. *Id.* at 493-94. Specifically, "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Id.* at 494.

Moreover, "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.' This means that an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (quoting *Burch*, 400 F.3d at 681). Clear and convincing reasons may be found by an ALJ by identifying inconsistencies in the objective medical evidence and in Plaintiff's conduct. *See id.* at 496-98. Essentially, "the clear and convincing standard requires an ALJ to show his work." *Id.* at 499.

2. **Plaintiff's Testimony**

Plaintiff testified about her symptoms at the hearing before the ALJ on December 5, 2023. (AR 54-77.) Plaintiff explained that her most prominent symptoms are chest pain and shortness of breath. (AR 64.) She described many kinds of activities that bring about

the chest pain, like washing dishes, sweeping, and playing her with toddler, but also stated that she experiences chest pain even when she is sitting down and watching television. (*Id.*) Plaintiff testified that her symptoms worsened in 2021 when she became pregnant. (AR 66.) At that time, she felt the same level of pain that she experienced before her triple bypass surgery in 2009. (*Id.*) In 2021, she learned that two of the three bypasses had failed. (*Id.*) Plaintiff's symptoms eventually improved, and she testified that she worked for about six months in 2022. (AR 67-68.) However, she had to leave that job because her chest pain eventually worsened. (*Id.*)

When she has chest pain, Plaintiff stops what she is doing, tries to relax, and takes her medication. (AR 68.) If she does not feel relief, she takes more medication, and if the pain does not stop, she must go to the emergency room. (*Id.*) Plaintiff testified that she experiences chest pain one to five times per day. (*Id*) She can walk 25 feet before stopping to rest and she can wash dishes for fifteen to twenty minutes before taking a break. (AR 69.) Plaintiff testified that her emotions can also cause chest pain, including when she watches an exciting movie or hears exciting or bad news. (AR 70.)

At the supplemental hearing on April 9, 2024, Plaintiff testified that her symptoms had worsened, and her chest pain was more frequent. (AR 50.) She stated that she tries to do chores throughout the day. (AR 51.) Plaintiff testified that she "take[s] it easy" throughout the day, but still gets chest pain. (*Id.*) She stated that she needs to take a break and take her medication about twenty times per day. (*Id.*)

The ALJ discredited Plaintiff's symptom testimony by stating:
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 29.)

Before reaching that conclusion, the ALJ discussed the medical evidence, Plaintiff's

1 symptom testimony, Plaintiff's activities of daily living, and the medical opinions. (AR 26-29.) The ALJ found that, although Plaintiff's symptoms worsened in 2021, they stabilized after she gave birth and ultimately do not result in limitations that are as severe as alleged. (AR 27.)

### 3. Discussion

The Court agrees with Plaintiff that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (requiring an ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony") (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). The failure to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony is harmful error.

The ALJ erred because he "failed to identify specifically which of [Plaintiff's] statements [he] found not credible and why." *See Brown-Hunter*, 806 F.3d at 493; (*see* AR 27.) After summarizing the medical evidence and Plaintiff's symptom testimony, the ALJ stated: "Despite the claimant's allegations, she is able to drive, use public transportation, perform personal care, prepare meals, shop, manage finances, socialize with others in person, and take care of her baby. Physical examinations also reveal that the claimant maintains unlabored breathing, full strength in the bilateral upper and lower extremities, as well as smooth gait." (AR 27.) The ALJ then concluded that Plaintiff's reported symptoms are inconsistent with the record as a whole.

But the ALJ did not explain how Plaintiff's activities of daily living undermine her testimony. In an exertion questionnaire, Plaintiff affirmed that she could drive, but only for 20-30 minutes, and that there is usually someone with her because her chest pains can make driving unsafe. (AR 276, 307.) Plaintiff reported that she takes care of her baby with help. (AR 275.) Plaintiff also reported that she can socialize with others in person but stated that she usually will just sit and talk or watch television, and besides weekly church, she only attends special occasions. (AR 308.) Given the consistencies between Plaintiff's testimony

and the activities described by the ALJ, it is not clear how these activities of daily life undermine Plaintiff's testimony. *See Treichler*, 775 F.3d at 1102.

Further, the Court does not conclude the physical examinations cited by the ALJ undermine Plaintiff's testimony. The ALJ cited physical examinations from doctors' visits noting that Plaintiff had unlabored breathing, strength in extremities, and normal gait. (AR 27, 681, 1106, 1114, 1122, 1429, 1448, 1450, 1454.) But unremarkable musculoskeletal and respiratory evaluations do not necessarily contradict Plaintiff's testimony that she frequently experiences shortness of breath and chest pain. In other words, both the unremarkable examinations and Plaintiff's reported symptoms can be true. Because the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony, the Court finds harmful legal error.

In addition, it is unclear whether the ALJ's rejection of the symptom testimony is supported by substantial evidence in the record. The ALJ addressed the following medical evidence at step four. (AR 26-27.) The ALJ discussed Plaintiff's history of Kawasaki's disease and coronary aneurysms, and observed that in 2009, she had a triple artery bypass surgery. (AR 1429, 1433.) In January 2022, Plaintiff reported chest and neck pain. (AR 1110.) The ALJ also considered that Plaintiff underwent a stress echocardiogram on July 16, 2021 that was negative for ischemia and showed no vulvar abnormalities. (*See* AR 1429.) On August 13, 2021, a coronary computed tomography angiography showed a single vessel supply to the heart and wall thickening surrounding the graft from vasculitis. (AR 1428.) Plaintiff had a cardiac catheterization procedure on October 5, 2021. (AR 1324-25.)

The ALJ observed that Plaintiff gave birth via cesarean section in October 2021, which "require[d] preparation from cardiology." (AR 399-400, 469, 1428.) The ALJ explained that after delivering her child, Plaintiff reported improvement in her symptoms. (AR 503, 1292.) Plaintiff treated her symptoms with statin therapy, antiplatelet therapy, and oxycodone. (AR 755, 1292, 1450.) In July 2022 and November 2022, Plaintiff underwent cardiopulmonary exercise testing, which revealed no significant abnormalities,

though the provider noted she had moderate to severely depressed exercise capacity. (AR 745, 834.) Plaintiff has been referred for a heart transplant evaluation. (AR 312, 1108, 1448.) In January 2023, Plaintiff had an echocardiogram which "revealed normal left ventricular systolic function and an ejection fraction of 50 to 55 percent. Right ventricular systolic function was reduced, and the right ventricular chamber was enlarged. There were no hemodynamically significant valvular abnormalities." (AR 26, 1428.) On April 18, 2023, Plaintiff had another computed tomography angiography, which showed no significant change from the previous one in August 2022. (AR 1428.) Treatment notes from May 2023 show that Plaintiff reported worsening angina over the six months prior as well as continued dizziness. (AR 1436.) The ALJ noted that physical examinations showed mild tachycardia, tenderness, and decreased range of motion in the cervical spine, unlabored breathing, full strength in extremities, and smooth gait. (AR 681, 1106, 1114, 1123, 1162, 1429, 1448, 1450, 1454.)

As discussed above, the ALJ also considered Plaintiff's daily activities. (AR 27.) The ALJ observed that despite Plaintiff's stated limitations, Plaintiff is able to "drive, use public transportation, perform personal care, prepare meals, shop, manage finances, socialize with others in person, and take care of her baby." (AR 27 citing 273-77, 304-13, 753.)

Finally, the ALJ considered the medical opinions of five doctors. (AR 27-28.) The ALJ found the opinion of medical consultant L. DeSouza, M.D., opining that Plaintiff could perform light work, to be inconsistent with the record and therefore not persuasive. (AR 27.) The ALJ then assessed medical consultant Erika Wavak, M.D.'s opinion that Plaintiff could perform sedentary work with limitations. (AR 27-28.) The ALJ found that that the limitations were not supported, but the opinion was otherwise persuasive. (AR 28.). Third, the ALJ considered medical expert John R. Morse, M.D.'s testimony, finding his opinions persuasive. (AR 28.) As summarized by the ALJ, Dr. Morse opined that Plaintiff's impairments do not meet or equal a listing "because she does not have heart failure," and that she can perform full sedentary work. (*Id.*) As to treating provider Ellana Davidov,

PASUP, the ALJ found her opinion that Plaintiff could not perform increased physical activities to supported by the treatment notes. (*Id.*) However, he found that her opinion about mental limitations was not supported by the other evidence in the record. (*Id.*) Lastly, the ALJ considered treating provider Radha Gopatan, M.D.'s opinions, and found that this provider's treatment notes support limiting Plaintiff to sedentary work. (AR 28-29.) Therefore, the ALJ found the opinion persuasive to the extent it was consistent with the other findings in the decision. (AR 29.)

There may be evidence in the record supporting Plaintiff's symptom testimony as well as evidence that is inconsistent with that testimony. However, the crux of the matter is ALJ did not specify why he found certain findings less persuasive than others. *See Brown-Hunter*, 806 F.3d at 489 (The ALJ must "specify which testimony he finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."). Thus, the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.

**IV.    REMAND**

Based on the foregoing, the Court finds that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. As such, the Court must determine whether to remand for further proceedings or calculation of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Although the ordinary remedy for reversible error is to remand the case for further administrative proceedings, the credit-as-true rule may apply in rare circumstances. *See Garrison,* 759 F.3d at 1020.

Under the credit-as-true rule, the Court may remand for the award of benefits if the following three criteria are met: (1) the record was fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting claimant testimony or medical opinion evidence; and (3) crediting the evidence as true, the ALJ would be required to find the

claimant disabled upon remand. *Id.* However, even if the credit-as-true criteria are met, the Court may remand for further proceedings when "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021.

Plaintiff argues that remand for calculation of benefits is appropriate here because there is no factual dispute. (Doc. 17 at 19.) "A court should not remand for benefits when the record, taken as a whole, leaves the 'slightest uncertainty' as to the proceeding's outcome." *Morgan v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00109, 2022 WL 4377130, at *1 (D. Ariz. Sept. 22, 2022) (quoting *Treichler*, 775 F.3d at 1101). There are ambiguities in the record that must be resolved to determine whether Plaintiff was disabled. It is uncertain how proper consideration of Plaintiff's symptom testimony, along with other evidence in the record, will impact the residual functional capacity analysis. Thus, further proceedings are necessary to determine what level of work, if any, Plaintiff may be able to perform. Consequently, undersigned recommends remand for further administrative proceedings so that the ALJ may correct the errors in the analysis and reexamine the evidence.

## V. CONCLUSION

Based on the foregoing,

**IT IS THEREFORE RECOMMENDED** that the Clerk of Court substitute Frank Bisignano, the Commissioner of Social Security, as the defendant in this action.

**IT IS FURTHER RECOMMENDED** that the final decision of the Commissioner of Social Security be **REVERSED** and this case **REMANDED** for **FURTHER PROCEEDINGS**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rules of Appellate Procedure, Fed. R. App. P. 4(a)(1), should not be filed until entry of the District Court's judgment. Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within fourteen (14) days after being served with a copy of this Report and

Recommendation. Pursuant to Rule 7.2(e)(3), Local Rules of Civil Procedure, objections to the Report and Recommendation may not exceed ten (10) pages. If objections are not timely filed, the party's right to de novo review by the District Judge is waived. *See U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 17th day of July, 2025.

Honorable Alison S. Bachus
United States Magistrate Judge